First degree murder; sentence: life imprisonment.
On the evening of May 13, 1977, Sandy Ray Patterson was stabbed to death in front of the Classic Book Store at 5th Avenue, North and 19th Street in Birmingham, Alabama. The victim had been stabbed seventeen times with a knife.
There were two eyewitnesses to the stabbing, Andrew Harrison and Richard Robinson. Both witnesses testified that the appellant repeatedly stabbed the victim in the stomach area while the victim was standing with his back to a wall and in the back area while the victim lay on the sidewalk face down. Both testified that they never saw the victim strike, hit, or make any stabbing motions toward the appellant. In addition, Officer Y.J. Cope arrived at the scene during the commission of the crime and observed the appellant in a position on top of the victim and in the progress of stabbing him. The murder weapon was recovered at the scene and introduced into evidence.
The appellant took the witness stand and claimed self-defense. The conflict in the evidence was for the jury's determination. Higginbotham v. State, Ala.Cr.App.,346 So.2d 525 (1977).
 I
The appellant contends the trial court committed reversible error by refusing to charge the jury on manslaughter in the second degree as being a lesser offense as included in the indictment which charged first degree murder. The appellant did not request a written charge on second degree manslaughter. He excepted to the trial court's omission of second degree manslaughter in its oral charge and orally requested the charge. As stated in Smith v. State, 53 Ala. App. 657,303 So.2d 157 (1974):
 "[W]here a party desires the court to extend its oral charge to cover some applicable law in the trial of a case, his remedy is to request a written charge on the subject, which if refused would protect the record and present the matter to the Appellate Courts. The rules governing objections and exceptions to the oral charge of the court either in the matter of what the court says or does not say require that if the objection is to what the court did say the remedy is only by exception thereto (Passmore v. State, 47 Ala. App. 189, 252 So.2d 115), and if the objection is to the court's refusal or omission to charge on a particular subject applicable under the evidence the procedure is by way of a requested written charge. (Lewis v. State, 42 Ala. App. 166, 157 So.2d 38; Tranholm v. State, 38 Ala. App. 57, 77 So.2d 491).
 "A failure to pursue one of the remedies above set out, if proper and applicable to the case, is a waiver of a review by this court as to the matters in question."
Accord: Smith v. State, 262 Ala. 584, 80 So.2d 307 (1955);McPherson v. State, 198 Ala. 5, 73 So. 387 (1916); Bowens v.State, 54 Ala. App. 491, 309 So.2d 844, cert. den. 293 Ala. 746,309 So.2d 850 (1975); Gray v. State, 52 Ala. App. 481,294 So.2d 448 (1974); Wilder v. State, 52 Ala. App. 157, 290 So.2d 225
(1974).
Even though the appellant did not properly preserve the question for review, we will set forth our reason for believing that the trial court's ruling was correct. The definition of manslaughter in the second degree appears in Smith v. State,56 Ala. App. 609, 324 So.2d 323 (1975):
 "`[T]he unlawful killing of another human being, without malice and without intent to kill or to inflict the injury resulting *Page 538 
in death, but accidentally committed by the accused while he was doing an unlawful act amounting to a misdemeanor, or accidentally committed by the accused while he was doing a lawful act, but in a grossly negligent or improper manner.'"
To warrant a charge on the lesser offense of manslaughter in the second degree there must have been a reasonable theory from the evidence to support the offense. Chavers v. State, Ala.,361 So.2d 1106 (1978). The deceased in this case was stabbed with a knife seventeen times. The fact that the appellant did the stabbing was undisputed. The appellant continued to stab the deceased even after a policeman arrived and ordered him to stop. The testimony of Andrew Harrison and Richard Robinson tended to show that the appellant was the aggressor and had the deceased backed up to a wall. They testified that even after the deceased fell to the ground the appellant just rolled him over and kept stabbing. The jury rejected the appellant's claim of self-defense. The appellant at no time introduced evidence that his actions were accidental or unintentional. In the case of Williams v. State, 251 Ala. 397, 39 So.2d 37 (1948), it is stated:
 "`It has long been the settled law of the state that where the evidence shows that the blow which produced death was with a deadly weapon intentionally aimed at the person slain, the homicide, if not excusable on the ground of self-defense, is either murder or manslaughter in the first degree. The law in respect to manslaughter in the second degree is not applicable in such case. * * *.' . ." (Citations omitted.)
There was no evidence presented to support the lesser offense of manslaughter in the second degree.
 II
The appellant testified during direct examination that he had been previously convicted for the crimes of burglary and forgery. He also testified that he was presently on probation in federal court for a firearms violation. On cross-examination the appellant testified without objection that he also had prior convictions for assault and battery and attempted burglary.
At the conclusion of the appellant's testimony, the trial court denied the appellant's attempt to introduce evidence of prior crimes of the victim. The appellant in his brief admits that evidence of specific acts, i.e. prior crimes, of the victim was illegal; and we concur. Smith v. State, 197 Ala. 193,72 So. 316 (1916); Donald v. State, 12 Ala. App. 61,67 So. 624 (1915). The appellant contends that an exception should be carved out of the general rule because there was illegal evidence admitted against him. He claims that the introduction into evidence of his prior crimes of assault and battery and attempted burglary was illegal because they were not crimes involving moral turpitude.[1] Title 7, § 434, Code of Alabama 1940 (now § 12-21-162, Code of Alabama 1975). The appellant contends that he should have been able to "fight fire with fire" by introducing evidence of prior crimes of the deceased under the doctrine of curative admissibility.
According to Gamble, McElroy's Alabama Evidence, § 14.01 at page 13:
 "Curative Admissibility is a doctrine which holds that if a party introduces illegal evidence, his opponent has the unconditional right to rebut such evidence with other illegal evidence. The rule is applicable even if the opponent failed to object to the original illegal or inadmissible evidence. A limitation upon this doctrine is the rule that the illegal rebuttal evidence may be admitted only to the extent that it cures the effect of the admission of the first illegal evidence. If, for example, a party introduces evidence of a hearsay conversation then his opponent has the right to introduce only so *Page 539 
much of the remainder of the conversation as rebuts that portion first offered."
First, the appellant had already cast a shadow on the character of the victim by testifying as to specific acts of violence committed by the victim. From the record:
"DIRECT EXAMINATION
"BY MR. MAY:
 "Q Ronnie, did you know Sandy Ray Patterson's reputation for violence?
"A Yes, sir.
"MR. DICK: I object.
"THE COURT: Overruled.
"Q Did you know his reputation for quarrelsomeness?
"MR. DICK: Object.
"THE COURT: Overruled.
"A Yes, sir.
 "Q What was his reputation for violence and quarrelsomeness?
"MR. DICK: Object.
"THE COURT: Overruled.
"A It was bad.
 "Q Had you had occasion to talk with others about things that Sandy Ray Patterson had done?
"A Yes, sir.
 "Q Did you know of things that he had done to other people?
"MR. DICK: I object.
"MR. MAY: I'm not even through with my question.
 "Q Did you know of things that he had done to other people based on that, on being told?
"MR. DICK: Object.
"THE COURT: Violent acts?
 "MR. MAY: Yes. I'm talking about violent things that he had done to other people.
"THE COURT: Overruled.
"A Yes, sir.
 "Q What specific things do you know of or did you hear of that he had done to other people?
 "MR. DICK: Objection, Your Honor, as to specific things.
"THE COURT: Overruled.
"A Two guys were telling me . . .
 "THE COURT: Wait a minute. Just say what you heard with reference to violence. Don't go into detail. Just tell generally.
 "Q The question is what had you heard about things Sandy Ray Patterson had done to hurt someone else?
 "MR. DICK: I'm gonna object again to what he heard is hearsay and not relevant to this case, and he doesn't have a right to go into the specifics.
"THE COURT: I'm gonna let it in. Overruled.
"A He tried to molest young men.
 "Q Was there anything else? Had you heard that he had been charged with that?
"MR. DICK: Object.
"THE COURT: Sustain it.
"MR. MAY: I'm gonna tie that up, Your Honor.
 "Q Any other things you've heard about Sandy Ray Patterson?
 "A He liked to go around picking fights with people and throwing gas on them and matches, stuff like that.
"THE COURT: What was that?
 "Q Speak slowly so the judge can understand you. Repeat your answer.
 "A He picked fights with people and he would throw gas on people and strike matches and burn them up.
"Q You heard that he had done that?
"A Yes, sir."
It would have been repetitious to allow the additional testimony of the specific crimes of the victim.
Second, the doctrine of curative admissibility is limited to the "extent that it cures the effect of the admission of the first illegal evidence." The violent character of the victim has already been shown. Further destroying the victim's character does nothing to cure or explain the evidence admitted against the appellant concerning his prior crimes. The only thing to be accomplished would be to show that both parties were convicted felons. We fail to see how the prior crimes of the victim would "erase from the minds of the jurors" the *Page 540 
prior crimes of the appellant. Cook v. Latimer, 274 Ala. 283,147 So.2d 831 (1962). See also: Peyton v. State, 40 Ala. App. 556, 120 So.2d 415, cert. denied, 270 Ala. 740, 120 So.2d 429, cert. denied, 364 U.S. 870, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960). The appellant has tried to reestablish his credibility by impeaching the character of the victim. This he cannot do.
AFFIRMED.
All the Judges concur.
[1] Assault and battery has been held not to involve moral turpitude. Gamble, McElroy's Alabama Evidence, § 145.01 (10). There has been no determination of whether attempted burglary involves moral turpitude; however, burglary does involve moral turpitude. Gamble, McElroy's Alabama Evidence, § 145.01 (9).